The defendant then read in evidence a statute of New York, which fixes the rate of interest at 7 per cent, and enacts that all notes and securities whereupon or whereby there may be reserved or taken any greater rate of interest, shall be void. The defendant, after releasing him, proved by Wykoff, the maker of the notes, that he executed them in New York for the purpose of raising money on them by a sale in the market, and that the defendant endorsed them in New York without consideration, and merely for the accommodation of Wykoff, and that, after the notes were endorsed by the defendant, he, Wykoff, received them from the defendant and placed them in the hands of Charles Buck, a broker, in the City of New York, to be by him negotiated for and on account of Wykoff on the best terms in his power. That Buck afterwards paid to Wykoff the sum of $1,960.03 as the proceeds of the note for $2,250, retaining one-half per cent, $11.25, for his commission, and the residue, $278.44, was for the discount or interest; and also paid him the sum of $2,550 as the proceeds of the note for $3,000, retaining for his commission $15, and the residue, $435, was for the discount at the rate of 3 per cent a month, and that Wykoff was not to receive anything more from Buck and had not received anything more from him for those notes, but the two sums of $1,960.03 and $2,550 before mentioned.
The defendant also proved that he had endeavored to obtain the testimony of the broker, Buck, and had summoned him to give his deposition in New York, where he still resided, but was unable to procure his attendance.
His Honor, upon this evidence, instructed the jury that if the notes were made by Wykoff and were endorsed by the defendant for his accommodation, and to enable him to raise money on them, and were sold in New York for him by Buck at the sums stated to have been received by him, Wykoff, or at a greater rate than 7 per cent discount, then they *Page 361 
were infected with usury, and the plaintiff could not recover. But the proof of the plea devolved on the defendant, and unless they were satisfied that the broker, Buck, negotiated the notes at an usurious rate of discount to the persons who purchased them from him, (459) then their verdict ought to be for the plaintiff.
The counsel for the defendant then moved the court further to instruct the jury that if they believed that Wykoff received for the notes respectively only the sums stated by him, the broker being the agent of both the maker and the vendee — then the transactions were usurious, no matter what passed between the broker and the vendee of the notes. This instruction the court declined to give, and there was a verdict and judgment for the plaintiff and the defendant appealed.
On all the points in this case, which are open to action of this Court, our opinion accords with that delivered in the Superior Court. Perhaps, if the jury had been fully informed of the course of business transacted by a bill-broker, and of the state of trade in New York towards the end of the year 1836, they might in a civil cause have felt it their duty to infer, from the evidence and circumstances, that Buck paid over to Wykoff all the money he got or was able to get for the notes, excepting only his commission of 1/2 per cent, which does not seem to have been an unusual or unreasonable compensation. But for this error of the jury, if it be an error, the only remedy is a new trial, granted on the ground that the verdict was against the evidence or the weight of evidence; and to grant or to refuse a new trial upon that, or a similar ground, rests exclusively in the sound discretion of the judge who presided at the trial. This Court could not interpose, although it might appear clearly, in our opinion, that injustice had been done by the verdict. If injustice has been done to the defendant at all, it seems to us to consist entirely in the erroneous conclusion on this question of fact, which the jury adopted, and not in the misdirection by the court.
If the jury had believed that Buck got from the person to (460) whom he passed the notes no more money then he paid over to Wykoff, then they must, according to the instructions, have found for the defendant, for his Honor stated explicitly that in that case the contracts were usurious and the notes void. With this instruction we fully concur, as the notes were endorsed for the accommodation of the maker, and had not been put into circulation until passed by Buck, as the agent of the maker. Ruffin v. Armstrong, 2 Hawks., 411. With that instruction the defendant, we think, ought to have been satisfied, and placed his *Page 362 
case before the jury on the truth of the fact hypothetically stated in the instruction. But the defendant declined leaving the case upon that point, and moved a further instruction that if Wykoff received only the sums stated by him the notes were usurious, no matter what passed between the broker and the vendee of the notes. This was refused by the court, as we think, properly.
The correctness of the instruction as prayed for is urged upon several grounds, none of which strike us as sound. It is said in argument here that the defendant is at liberty to consider Buck himself to have been the discounter, in which case there was, unquestionably, usury. But, without some evidence upon the point it cannot be admitted or assumed that a bill-broker, undertaking to negotiate notes in the market for another person upon the best terms in his power took them on his own account, especially when a third person is found to be the holder, and the testimony of Wykoff excludes the idea that Buck acted otherwise than as broker in good faith. Besides, the very terms of the instruction admit him thus to have acted, since it is supposed therein that something passed between Buck, as broker and as vendee of the notes.
Again, it is contended here, as in the Superior Court, that the broker is the agent of both the maker and the purchaser of the notes, and therefore, as the agent of the discounter, paid the maker a less sum for the notes than he ought, which constitutes usury against the discounter. Neither the premises, as here stated, nor the deduction from them, can be sanctioned by the Court. A person may, by placing money in his hands for that purpose, or otherwise, make a broker his agent to (461) buy notes, and if the person thus constituted agent undertake to sell notes for another person, and by virtue of his several powers from his principals respectively, make a bargain with himself, purporting to be a discounting of the note at usurious interest, and hand over the note to him for whom he was to buy at that rate, and the money to the former owner of the note; it may be admitted to be an usurious contract, entered into by the parties through their agent, the same person happening to be the agent of each. But there is nothing in the character of a bill-broker, or in his transactions, that necessarily constitutes him the agent of both the seller and buyer of paper passing through his hands. The contrary is to be inferred, and it is to be supposed that he is the agent of one only, because, after contracting with one, it is inconsistent with the interest of that one, and with the broker's duty to him, to undertake the same office for the other party. Besides, the argument is altogether fallacious in this: that it visits upon the purchaser of the note the consequences of the dishonesty of the broker in withholding from the original owner of the note a part of the price actually placed into his hands by the purchaser, and this, upon the alleged ground that the broker is the *Page 363 
agent of the purchaser, and that the latter is consequently bound by the acts of the former. Now, the argument admits the broker in this case to be at least equally as much the agent of the seller as of the purchaser, and that being so, it follows that when the purchaser pays to the broker the full price for the note, deducting only legal interest, he, in so doing, pays it to the seller himself. Consequently, the subsequent abstraction of the price, in whole or in part, by the broker from his principal, the maker of the note, cannot affect the assignee of the note with an implied imputation of corruption from usury, when, in fact, there was no corruption on the part of the assignee, but the full value was paid by him. The proposition from which conclusions thus contradictory can be legitimately drawn, must be unsound in itself. The truth is, this broker was not the agent of both the parties, but only of the one who, according to the evidence, employed him; namely, Wykoff, the maker of the note. The broker did not deal for the purchaser, but with him, (462) and on behalf of the seller. The assumption then of the joint agency of Buck, being unfounded, the argument built upon it must also fall.
From the remaining terms of the instruction prayed for, and taking it in connection with the instructions previously given, it is substantially that the contract of the purchaser was corrupt and usurious, although he might have paid to Buck the full sums mentioned in the notes, deducting only the interest for the time they had to run, and after the rate prescribed by the statute, provided, and because Buck paid over to Wykoff a less sum, but kept back a part thereof, over and above his reasonable commission. The expression "no matter what passed between the broker and the vendee of the notes," can be understood in no other sense when it is recollected that the court had just informed the jury that if Buck received no more than he paid to Wykoff then the purchaser was guilty of usury. It was to supply an alleged defect in that instruction that the further one was prayed, which must, therefore, mean that if Buck had received more than he paid over to Wykoff and even received the whole sums mentioned in the notes, the purchaser would still be guilty of usury, simply by reason of Buck's dishonestly keeping back part of the price, a proposition so unreasonable in itself that as soon as it is stated, so as to be understood, it must be rejected.
The judgment is affirmed.
PER CURIAM. Judgment affirmed.
Cited: Reed v. Moore, 25 N.C. 314; S. v. Gallimore, 29 N.C. 148; S.v. Smallwood, 78 N.C. 562; Greenleaf v. R. R., 91 N.C. 38; Goodson v.Mullen, 92 N.C. 212; S. v. Best, 111 N.C. 643; Edwards v. Phifer,120 N.C. 406; Benton v. R. R., 122 N.C. 1010. *Page 364 
(463)